CHARLES R. F. GREENE *vs.* ALFRED J. GREENE & others.

Bristol.    October 26, 1909. — February 21, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, Specific performance.    *Contract*, Construction.    *Trust.*

A woman, who possessed personal property worth $3,200 exclusive of her personal effects, died intestate, leaving a husband and two married sons, A. and C. C. had children, A. had none. The intestate left a "request" in writing as to the disposition of her property, in which, besides directing the giving of various articles of use and ornament to certain persons, she stated in the first clause that her husband should have all the rest of her estate and that on his death " I wish everything to be equally divided between the two sons "; in the second clause she gave to A. " one half the real and personal after his father in trust in his wife's care not to pay any old debts but for his and her use after him should he die without an issue then to go to the other sons heirs "; in the third clause she gave to C. the other half of the real and personal property absolutely " after his father." Within a few days from the time of the funeral of the intestate, the articles of use and ornament were distributed in accordance with the " request." Thereafter the husband and two sons executed an agreement in writing under seal that the husband should receive from the administrator all of the remaining personal property and should hold it as trustee for the carrying out of the terms of the " request," that he should receive the income thereof during his life, " but shall not use any part of the principal, the said principal being reserved as a trust fund for the " sons, " to be distributed between " them " upon the death of the " husband " according to the terms and intentions of the . . . written request." The husband was appointed administrator and, after his death, an administrator *de bonis non* of the wife's estate was appointed and the $3,200 worth of personal property came into his possession. Thereafter the two sons executed a further agreement in writing and under seal, by which it was agreed that one half of the personal property in the hands of

the administrator should be paid to C. absolutely, and one half to the wife of A. in trust for A. and his wife, upon the wife giving to C. a suitable bond that the income should be used for the benefit and support of A. and his wife. The agreement contained a provision for a distribution to A.'s issue, if any survived him and his wife and reached the age of twenty-one years, otherwise for a distribution to the children of C. on the death of A. *Held*, that C. might maintain a bill in equity to enjoin the administrator from paying one half of the personal property to A. and to compel him to pay it to A.'s wife as trustee or to some other trustee upon the same trusts if she refused to serve, and to compel A.'s wife, or some other suitable person if she declined to act, to accept the property on the trusts set out in the "request" and the agreements.

A woman, who died intestate possessed of personal property, exclusive of personal effects, worth $3,200, and seised of real estate in New York State and in this Commonwealth worth $11,000, left a husband and as her only next of kin two married sons, A. and C. She left a "request" in writing as to the disposition of her property, in which, besides directing the giving of various articles of use and ornament to certain persons, she stated in the first clause that her husband should have all the rest of her real and personal estate and on his death "I wish everything to be equally divided between the two sons real and personal." By a second clause she gave to A. "one half the real and personal after his father in trust in his wife's care not to pay any old debts but for his and her use after him should he die without an issue then to go to the other sons heirs." In the third clause she gave to C. the other half of the real and personal property absolutely "after his father." Within a few days after the funeral of the intestate, the articles of use and ornament were distributed in accordance with the "request." Eight days after her death, the husband and two sons executed an agreement under seal, whereby the husband was to receive the personal property from the administrator of his wife's estate "and shall carry out the intention of the deceased as set forth in her written request," that he should hold the property in trust "shall enjoy and use for his own benefit all the income therefrom . . . but shall not use any part of the principal, the said principal being reserved as a trust fund for the parties of the second part [the sons] to be distributed between said parties of the second part upon the death of" the husband "according to the terms and intentions of the aforesaid deceased's written request. . . . The original request is also hereto annexed and become a part of this agreement." Within ten days after the death, the husband conveyed his interest in both parcels of real estate to the sons and they as part of the same transaction conveyed a life estate therein to their father. Within a month the husband was appointed administrator of his wife's estate. Ten months later he died, and within four days the sons executed a second agreement under seal in which they described themselves as "the only remaining heirs" of their father and mother and "the only living parties to the declaration of trust" previously described, "herewith attached," and in which "in consideration of not contesting the second clause of the request which is a part of said declaration of trust and is attached thereto," they agreed that the clause should mean that "the one half portion of the estate" of their mother should be given to A.'s wife subject to a trust as to the income in favor of herself and her husband, and a final distribution to their issue if any, and, in default of such issue, to C.'s issue. *Held*, that the "request" and the two agreements should be construed together, and that they applied to the real as well as to the personal property of the intestate and that C. might maintain a suit in equity to compel the real estate to be held upon the trusts described therein.

BILL IN EQUITY, filed in the Superior Court on February 21, 1908. The allegations and prayers of the bill are stated in the opinion.

The case was heard by *Crosby*, J., upon the pleadings and upon facts which were agreed to at the hearing. The facts are stated in the opinion. The agreement "B," therein referred to, was as follows:

" Memorandum made this eighth day of December A. D. 1904, between Luthan J. Greene of New Bedford, County of Bristol, Commonwealth of Massachusetts, hereunto called the trustee, party of the first part, and Alfred J. Greene of Grand Rapids, State of Michigan, and Charles R. F. Greene of Peekskill, State of New York, parties of the second part.

" Whereas Adeliza M. Greene, late of said New Bedford, died on the first day of December A. D. 1904, leaving no will but leaving a request, a copy of which is hereto annexed, and leaving as husband the aforesaid Luthan J. Greene the party hereto of the first part and all her heirs-at-law and next of kin being the aforesaid Alfred J. Greene and Charles R. F. Greene, sons of said Adeliza M. Greene hereinbefore called the parties of the second part.

" Now therefore, by the terms of the aforesaid request which was made in writing by the aforesaid Adeliza M. Greene, it is agreed between the parties to this instrument that the said Luthan J. Greene, party of the first part, shall receive from the administrator of the Estate of the late Adeliza M. Greene all the personal property belonging to said Estate and shall carry out the intention of the deceased Adeliza M. Greene as set forth in her written request; that it appears, by the terms of said request, that the personal property of said Estate shall be held in trust by the party of the first part for the parties of the second part during the life of said Luthan J. Greene, he, the said Luthan J. Greene, to have and retain the income therefrom for his own use and benefit; therefore it is agreed that said Luthan J. Greene, party of the first part, shall hold said personal property except the sundry articles mentioned in said request, which articles shall be distributed according to the request, upon and under the following terms during his the said Luthan J. Greene's lifetime: —

"That the said Luthan J. Greene, Trustee, shall take said property and shall enjoy and use for his own benefit all the income therefrom, whatsoever it may be, but shall not use any part of the principal, the said principal being reserved as a trust fund for the parties of the second part, to be distributed between said parties of the second part upon the death of said Luthan J. Greene according to the terms and intentions of the aforesaid deceased written request; that the aforesaid parties of the second part do hereby agree not to make any claim of any nature upon the said Trustee in regard to the aforesaid personal property during his, the said Trustee's lifetime, and that the said Trustee shall not be liable for any loss occurring to said property through any investments which he may make or otherwise, providing that the same shall be done or made in good faith and with the written consent of the parties of the second part. The original request is also hereto annexed and become a part of this agreement, a copy of which shall be held by the said parties of the second part, the original being held by the said Trustee.

"In witness whereof all the parties to this agreement hereto set their hands and seals this eighth day of December A. D. 1904.

"Luthan J. Greene      [seal.]
"Witnesses to signatures          Alfred J. Greene      [seal.]
      "George N. Gardiner.      Charles R. F. Greene [seal.]
"Witness as to Charles R. F. Greene.
      "Warren S. Jordan."

The agreement "C," referred to in the opinion, was as follows:

"To whom it may concern, know that we the undersigned only remaining heirs of the late Luthan J. Greene and Adeliza M. Greene and the only living parties to the declaration of trust signed by the said Luthan J. Greene and Alfred J. Greene and Charles R. F. Greene, the said declaration being dated December 8, 1904, and is herewith attached, do, for and in consideration of not contesting the second clause of the request which is a .part of the said declaration of trust and is attached thereto, for ourselves and our heirs, administrators, executors and assigns agree each with the other that the meaning of said second clause shall

be as follows, namely: — that the one half portion of the estate of the late Adeliza M. Greene which portion by said second clause of said request is to go to the wife of said Alfred J. Greene in trust for said Alfred J. Greene and his said wife Cora M. Greene, shall be paid to said Cora M. Greene upon her signing a declaration of trust and giving to the said Charles R. F. Greene suitable bonds and the income of said portion of property shall be used for the benefit and support of said Alfred J. Greene and his said wife; after them if said Alfred J. Greene has issue and said issue outlives its father and mother then said issue shall have the income of said property until attaining or arriving to the age of twenty-one years; upon said issue or any part thereof attaining the said age of twenty-one years the principal shall be paid to said issue; but if said issue does not attain the said age of twenty-one years said principal shall go to the children of said Charles R. F. Greene absolutely; also if said Alfred J. Greene has no issue upon the death of both Alfred J. Greene and his said wife the said principal shall go to the children of said Charles R. F. Greene.

" Signed and sealed this fourth day of November A. D. 1905.

" Alfred J. Greene          [seal.]

Charles R. F. Greene "          [seal.]

The trial judge reserved and reported the case for determination by this court.

The case was submitted on briefs.

*G. F. Tucker*, for the plaintiff.

*F. A. Milliken*, for the defendant Alfred J. Greene.

*A. W. Milliken*, for the defendant Cora M. Greene.

*G. N. Gardiner*, for the defendant Pardon G. Thomson, administrator *de bonis non*.

LORING, J. This case comes up on a reservation and report of all the evidence without any findings of fact having been made in the Superior Court.

It appears that on December 1, 1904, one Adeliza M. Greene of New Bedford died seised of two parcels of land (one in New Bedford and the other in Peekskill, New York) and possessed of certain personal property consisting in part of investments and in part of furniture and other articles of use and ornament.

She left as her heirs and next of kin a husband and two sons, Charles and Alfred by name.  She died intestate, but she left a written paper (spoken of in the report as a " request ") which ends with these words : " I wish my husband to settle the estate without pay my wishes [wish is] not to have this go to Court settle it among yourselves." By the first clause of this " request " she stated that her husband should have all her real and personal estate except that specifically given away, and on his death, " I wish everything to be equally divided between the two sons both real and personal." By the second clause of the " request " she gave to Alfred " one half the real and personal after his father in trust in his wifes care not to pay any old debts but for his and her use after him should he die without an issue then to go to the other sons heirs. " By the third clause of the " request " she gave the other half of the real and personal property to Charles absolutely " after his father." Mrs. Greene also gave away a number of articles of use and ornament not only to her husband and two sons, but also to her sons' wives and to four other persons, — presumably the children of Charles, although that is not stated to be the fact.

It is stated in an amendment to the bill of complaint, made after the replication was filed, that at the date of the decease of Mrs. Greene Alfred had and now has no children, and that Charles then had four and now has five children.  This has been assumed to be the fact by counsel for Alfred and by counsel for Alfred's wife.  We shall deal with the case on that footing, although the fact was not legally established on the record.

Within a few days of the funeral the articles of use and ornament were distributed in accordance with the request, with the exception of a fur cape which Cora, Alfred's wife, was to have.  Why this was not delivered does not appear.

On December 8, 1904, the written agreement under seal, known as agreement " B," was executed by the husband and two sons.  This agreement (apart from the last clause) dealt with " all the personal property belonging to said estate." It provided that the husband should receive this personal property from the administrator and hold it (" except the sundry articles mentioned in said request, which articles shall be distributed according to the request ") in trust, the income to be his during

his life, and on his death the principal "to be distributed" between the sons "according to the terms and intentions of the aforesaid deceased written request." The last clause of agreement "B" will be referred to later on.

On December 10, 1904, the husband conveyed his interest in both parcels of real estate to the sons, and they, as part of the same transaction, conveyed a life estate therein to their father.

On January 6, 1905, the husband was appointed administrator of the estate and filed an inventory.

On October 31, 1905, the husband died and the defendant Thomson was appointed administrator *de bonis non*. He found the securities set forth in the inventory filed by the husband intact and still standing in Mrs. Greene's name. These consisted of five shares of stock and deposits in three savings banks amounting to $3,200. The real estate in New Bedford was valued at $5,000 and that in Peekskill at $6,000.

On November 4, 1905, the sons signed the paper under seal known as agreement "C."

The defendant Thomson has administered upon the personal property, and has in his hands, subject to his expenses in this suit, the sum of $1,610.81.

On February 21, 1908, the bill in the case at bar was filed by Charles against Alfred, Alfred's wife, and Thomson the administrator *de bonis non*, alleging the death of Mrs. Greene, the "request" and the two agreements "B" and "C," and the fact that the estate is now settled, showing the sum of $1,610.81 in the hands of the administrator ready for distribution. The bill further alleged that by entering into agreement "B" the parties agreed to distribute the estate according to the request. The relief asked for is (1) that the administrator be enjoined from paying half of the $1,610.81 to Alfred, and that he be directed to pay the same to Cora as trustee, or, if she declines to accept the trust, to some suitable person to be appointed as trustee to administer said trust; (2) that Alfred be enjoined from conveying away the undivided half interest in the real estate situate in New Bedford, and that he be decreed to convey the same to said Cora as trustee as aforesaid, or, if she decline, to some suitable person to be appointed trustee in her place; and (3) that said

Cora be decreed to hold half of said sum of $1,610.81 and half of said real estate on the trusts set forth in the "request" and in said agreements, or, if she decline, that some suitable person be appointed to administer said trusts.

Upon the death of Mrs. Greene her real estate descended to her husband and two sons by force of R. L. c. 133, § 1, and R. L. c. 140, § 3, and by force of the same statutes they became entitled to the same share in her personal property. It is plain that a mutual agreement by each son to give to his father out of his share of the property a life estate in the whole in place of the one third which was his right, and subject to the life estate to settle one half upon Charles and the other half in trust upon Alfred and his wife during their lives and the life of the survivor of them, then to their issue, and in default of issue, to the issue of Charles, would have been a binding agreement *inter sese*, founded on a valid consideration, apart from the fact that it was made under seal. It is evident that the benefit of this agreement enures to the children of Charles. No question has been raised as to the proper parties plaintiff. We think that the plaintiff is entitled to equitable relief. The case comes within the principle acted upon in *Duffy* v. *Hogan*, 203 Mass. 397, where the earlier cases are collected. It follows that the plaintiff is entitled to the relief set forth in his first prayer and in the first part of the third prayer.

The serious question in the case is whether the relief granted is to be confined to the personal property.

The defendant's contention is that agreement "B" relates solely to the personal property, that agreement "C" simply amplifies and explains agreement "B," and that the parties by their deeds of December 10, 1904, have effectually disposed of any question as to the real estate.

Mrs. Greene died on December 1, 1904. The first thing, or one of the first things, done after the funeral was the distribution of the "small items of personal property." These "were distributed substantially as provided in said ' request.' " It is stated that this distribution was made within a few days after her funeral, and from the way in which that fact is stated in the reservation it would seem that this distribution came before the making of agreement "B." But it is also true that this distri-

bution was provided for in agreement "B." It is not of real importance which preceded the other.

The next thing done was drawing up agreement "B" and executing it on December 8, 1904. Apart from the last clause of it that agreement related to personal property only. It provided that the husband "shall receive from the administrator of the estate of the late Adeliza M. Greene all the personal property belonging to said estate and shall carry out the intention of the deceased Adeliza M. Greene as set forth in her written request." It then went on to provide that he should hold the personal property with the exception of "the sundry articles mentioned in said request, which articles shall be distributed according to the request," during his life, in trust, taking the income thereof during his life; "the said principal being reserved as a trust fund for the parties of the second part [the sons] upon the death of said Luthan J. Greene according to the terms and intentions of the aforesaid deceased [deceased's] written request." The last clause is in these words: "The original request is also hereto annexed and become a part of this agreement, a copy of which shall be held by the said parties of the second part, the original being held by the said trustee."

The next thing done was a conveyance to each son of one half of the father's undivided third interest in the two parcels of real estate and a conveyance to the father by the two sons of a life interest therein. After the conveyance to the father each son had a remainder in an undivided half of both lots of land, one undivided third having been cast upon him by the law and one undivided sixth having been conveyed to him by his father. These conveyances were made on December 10, 1904.

By agreement "B," made on December 8, and the conveyance made on December 10, the father and sons provided for all questions which had to be met at that time. That is to say, the life estate which the father was to have in all the property real and personal was brought into being and the terms were settled on which the personal property was to be held by him so as to secure his rights and the rights of those in remainder. It is true that the result of the conveyances was to leave the title to the land in the two sons subject to the life estate in the father, while in agreement "B" it is provided that the personal prop-

erty received by the father was " to be distributed between said parties of the second part upon the death of said Luthan J. Greene according to the terms and intentions of the aforesaid deceased [deceased's] written request." There is no such provision in the conveyances of the real estate. The drawing up of deeds which would have carried into effect all the provisions of the " request" would not have been an easy matter. Although it is a fact that the conveyances did not carry into effect all the provisions of the " request," yet since it did carry out all of those provisions which had to be dealt with at the time, it is not (in our opinion) fair to infer that the parties did not intend to adopt the request as a whole.

The father died on October 31, 1905, between nine and ten months after agreement " B " was made and the conveyances were executed. Four days after his death the two sons executed agreement " C." Agreement " C " states that " the undersigned, only remaining heirs " of Mr. and Mrs. Greene, and "the only living parties to the declaration of trust " dated December 8, 1904, " herewith attached," "do, for and in consideration of not contesting the second clause of the request which is a part of the said declaration of trust and is attached thereto," agree " that the meaning of said second clause shall be as follows, namely : — that the one half portion of the estate of the late Adeliza M. Greene which portion by said second clause of said request is to go to the wife of said Alfred J. Greene in trust for said Alfred J. Greene and his said wife Cora M. Greene, shall be paid to said Cora M. Greene upon her signing a declaration of trust and giving to the said Charles R. F. Greene suitable bonds and the income of said portion of property shall be used for the benefit and support of said Alfred J. Greene and his said wife ; after them if said Alfred J. Greene has issue and said issue outlives its father and mother then said issue have the income of said property until attaining or arriving to the age of twenty-one years ; upon said issue or any part thereof attaining the said age of twenty-one years the principal shall be paid to said issue ; but if said issue does not attain the said age of twenty-one years said principal shall go to the children of said Charles R. F. Greene absolutely ; also if said Alfred J. Greene has no issue upon the death of both Alfred J. Greene and his said wife the

said principal shall go to the children of said Charles R. F. Greene."

This agreement " C " in terms is made by the two sons as " the only remaining heirs of the late Luthan J. Greene and Adeliza M. Greene," as well as by them as " the only living parties to " agreement " B," signed on December 8, 1904. The rights which came to the sons as heirs were what was given up by them if they accepted the provisions as to real estate set forth in their mother's " request." Again, the subject matter of agreement " C " is " the one half portion of the estate of the late Adeliza M. Greene which portion by said second clause of said request is to go to the wife of said Alfred J. Greene in trust " etc.

Lastly, the mother's request dealt with the personal property and the real property as a unit.

Whatever would have been the proper construction of agreements " B " and " C " had they stood alone, we are of opinion that construed together they were an adoption by Alfred of the " request " of his mother as to the real as well as to the personal property left by her.

The result is that the plaintiff is entitled to the relief prayed for.

_So ordered._